**Michael COUSINS, Plaintiff,**

v.

**Elizabeth DOLE, Secretary of the United States Department of Transportation, Defendant.**

**Civ. No. 87–0069–P.**

United States District Court,
D. Maine.

Nov. 18, 1987.

Harold Lichten, Boston, Mass., Elaine Gardner and Sy DuBow, Washington, D.C., Marc P. Charmatz and Sarah S. Geer, Washington, D.C., for plaintiff.

Richard E. Greenberg, Raymond M. Larizza, Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM OF DECISION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

GENE CARTER, District Judge.

This action challenges a provision of the Federal Motor Carrier Safety Regulations, promulgated by the Department of Transportation (DOT), which prescribes minimum physical qualifications for persons driving motor vehicles on behalf of motor carriers. 49 C.F.R. § 391.41. Plaintiff is a hearing impaired individual who is licensed to drive a tractor trailer in the State of Maine, but who has been denied employment with at least one trucking company in the State because of his failure to meet the minimum hearing standard specified in 49 C.F.R. § 391.41(b)(11).[1]

Plaintiff sets forth two causes of action. First, he alleges that Defendant violated the Due Process Clause of the Fifth Amendment by 1) not affording him a hearing to determine his individual qualifications, and 2) applying an irrebuttable presumption that deaf persons are not qualified to drive trucks in interstate commerce. Second, he alleges that Defendant has violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1973) (amended 1978), by prohibiting all deaf individuals from driving motor vehicles.[2] Plaintiff argues that § 504 requires Defendant to

---

1. 49 C.F.R. § 391.41(b)(11) provides that a person is physically qualified to drive a motor vehicle if he "first perceives a forced whispered voice in the better ear at not less than 5 feet with or without the use of a hearing aid, or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz, and 2,000 Hz with or without a hearing aid when the audiometric device is calibrated to American National Standard (formerly ASA Standard) Z24.5–1951."

2. 29 U.S.C. § 794 reads in pertinent part:

No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service....

make an individual assessment of Plaintiff's ability to drive and afford him an opportunity to apply for a waiver of his physical disqualification.[3] Plaintiff seeks declaratory and injunctive relief, monetary relief in the form of back pay, lost fringe benefits, consequential damages, and attorneys fees.

Defendant has moved for dismissal on the grounds that neither the Fifth Amendment nor § 504 of the Rehabilitation Act provide an implied private right of action in this case. Defendant further argues that Plaintiff has invoked this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343, but has failed to cite any authority for waiving the sovereign immunity of the United States in actions for monetary relief under those statutes.

Because the Court finds that Plaintiff has failed to make out a claim for an implied private right of action under either § 504 or the Fifth Amendment, and because the Administrative Procedure Act (APA) creates a cause of action for the judicial review of regulations alleged to violate statutory or constitutional provisions, the Court will dismiss Plaintiff's complaint without prejudice to filing an amended complaint stating a claim for relief under the APA, 5 U.S.C. §§ 701 *et seq.* (1966) (amended 1976).[4]

## I.

■ The Court finds as a preliminary matter that Plaintiff's claims for monetary relief against Defendant (in her official capacity) under 28 U.S.C. §§ 1331 and 1343, should be dismissed under the doctrine of sovereign immunity. Although actions for non-monetary relief under § 1331 no longer give rise to the defense of sovereign immunity, *Warin v. Director, Department of the Treasury*, 672 F.2d 590 (6th Cir.1982) (citing cases to the same effect from the Third, Fifth, and Ninth Circuits),[5] neither § 1331 nor § 1343 provide an explicit waiver of sovereign immunity for federal officials acting in their official capacity. Similarly, no waiver of federal sovereign immunity is either explicit or implied in private rights of action under § 504 of the Rehabilitation Act. *See Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (express creation of right to sue recipients of federal assistance for violations of § 504 was not sufficiently clear indication of Congress' intent to abrogate state sovereign immunity).[6] Finally, Plaintiff has no implied right of action for damages for constitutional torts under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), because his complaint explicitly states that Defendant is being sued in her official capacity. *See Sanchez–Mariani v. Ellingwood*, 691 F.2d 592, 596 (1st Cir.1982) (a constitutional tort action under the *Bivens* line of cases "is against a

**3.** The record indicates that Plaintiff's counsel wrote the DOT, Federal Highway Administration, in May, 1986, asking for a determination whether a driver who drove only in the State of Maine would be subject to the physical qualifications of the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 391.41. Counsel was informed by letter dated June 17, 1986, that the regulations would apply and that waiver of the hearing requirement would not be feasible:

> After extensive study of all aspects of the question as it relates to accident frequencies of hearing-impaired drivers in comparison with nonhearing-impaired drivers and consideration of whether individual determinations are feasible, we decided against allowing waivers of this medical condition.

**4.** By 1976 amendment, Pub.L. 94–574, Congress removed the defense of sovereign immunity as a bar to judicial review of Federal administrative

action otherwise subject to review. 5 U.S.C. § 702.

**5.** The Sixth Circuit in *Warin* considered whether the 1976 Amendment to the Administrative Procedure Act, 5 U.S.C. § 702, which abrogated sovereign immunity in certain actions for non-monetary relief, constituted a waiver of of the sovereign immunity defense for the purposes of 28 U.S.C. § 1331(a). It held that it did constitute such a waiver for non-monetary actions.

**6.** In 1986, apparently responding to the *Scanlon* opinion, Congress amended the Rehabilitation Act to include the necessary language explicitly abrogating *state* sovereign immunity in actions for violations of § 504. Rehabilitation Act Amendments of 1986, § 1003, P.L. 99–506 (October 21, 1986). Significantly, Congress did not abrogate *federal* sovereign immunity in actions alleging violations of § 504 by federal agencies.

federal official in his individual capacity only, not in his official capacity"). Therefore, absent any express statutory waiver of governmental immunity, Plaintiff's claims for monetary relief are barred by principles of sovereign immunity.

## II.

■ Plaintiff has no direct cause of action for damages under the Fifth Amendment: "Judicial remedies are implied from the constitution only when there is no direct means for redress already available." *American Association of Commodity Traders v. Department of the Treasury*, 598 F.2d 1233, 1236 n. 2 (1st Cir.1979). The Administrative Procedure Act provides for the judicial review of regulations alleged to violate statutory or constitutional provisions; specifically, 5 U.S.C. § 706 provides that the reviewing court shall "hold unlawful and set aside agency action, findings and conclusions found to be ... contrary to constitutional right, power, privilege, or immunity." The availability of a remedy created by the Administrative Procedure Act for unconstitutional agency conduct was held to preclude a suit for damages directly under the constitution in *Heaney v. United States Vetrans Administration*, 756 F.2d 1215, 1220–21 (5th Cir.1985) (stating the proposition that where there is already a federal remedial mechanism "that allows an aggrieved employee to present a constitutional claim to obtain a measure of relief, a damages action is precluded absent clear congressional intent to the contrary."); *see also Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

In the present case, the Administrative Procedure Act provides Plaintiff with a substantial statutory remedy for the alleged constitutional violations. Any person "adversely affected or aggrieved by agency action", 5 U.S.C. § 702, may petition a federal court to "hold unlawful and set aside agency action, findings and conclusions found to be ... not in accordance with law" or "compel agency action unlawfully withheld." 5 U.S.C. § 706. The scope of the court's review is generally limited to the administrative record compiled by the agency. *Id.* As the First Circuit has previously stated, "the existence of a statutory remedy which is designed to implement the constitutional guarantee may itself render the *Bivens* analysis inappropriate." *Kostka v. Hogg*, 560 F.2d 37, 43 (1st Cir.1977); *see also Mahone v. Waddle*, 564 F.2d 1018, 1024–25 (3d Cir.1977). The equitable remedies sought by Plaintiff are directly related to the challenged regulation and DOT's denial of waiver, both of which would be fully addressed by this Court's review of the agency's action pursuant to the APA. In such circumstances, it is "unnecessary to fashion a cause of action directly from the Constitution to the extent that the equitable relief requested against [defendant] for its unconstitutional conduct would be available under the APA...." *Doe v. United States Civil Service Commission*, 483 F.Supp. 539 (1980). The Court therefore concludes that the existence of an effective and substantial statutory remedy in the Administrative Procedure Act obviates the need to imply a constitutional remedy from the Fifth Amendment in this case.

## III.

■ The final issue to be resolved is whether an implied private right of action against this Defendant exists under § 504 of the Rehabilitation Act. In *N.A.A.C.P., Boston Chapter v. Secretary of Housing and Urban Development*, 817 F.2d 149 (1st Cir.1987), the First Circuit discussed whether Congress, in enacting Title VIII of the Civil Rights Act, implicitly created a private right of action for plaintiffs against the federal government. While holding that no such private right of action was created under Title VIII, the court went on to discuss the availability of judicial review under the Administrative Procedure Act and stated the principle that

One would ordinarily expect, however, that when Congress means to permit a private party to ask a court to review the legality of federal actions in a manner that differs from APA review, Congress will say so explicitly in the statute.... Otherwise, it is reasonable to assume that Congress meant the APA to govern.

*N.A.A.C.P., Boston Chapter,* 817 F.2d at 153.

Plaintiff relies heavily on the United States Supreme Court case of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which established a four-part test for implying private rights of action under a federal statute.[7] The *Cort* test is applied "to help the courts decide what Congress intended when the statute itself is silent" with respect to implied rights of action against a nonfederal person or entity. *N.A.A.C.P.,* 817 F.2d at 152–3. Section 505 of the Rehabilitation Act, 29 U.S.C. § 794a(a)(2), is not silent with respect to enforcement remedies for § 504 violations. In 1978, § 505 was added to specify, in part, that the enforcement scheme of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* would apply to § 504 actions,[8] and that the remedies, procedures and rights set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5(f) through (k), 2000e–16, would be available in actions under § 501, 29 U.S. C. § 791. 29 U.S.C. § 794a(a)(1) & (2).

The Title VII remedies applied to the claims of employment discrimination, however, and the Defendant is not acting as a federal employer in this case. The Court must therefore look to what avenues of relief are provided under Title VI in order to determine Congress' explicit intent under der § 504.[9]

Under § 603 of Title VI, a claimant is provided two avenues for judicial review of federal agency decisions. 42 U.S.C. § 2000d–2. A recipient of federal funds may obtain review of an agency decision denying or terminating grant funding, or he may obtain such judicial review "as may otherwise be provided by law for similar action taken by such department or agency on other grounds." *Id.* Because Plaintiff is not alleging that Defendant denied him financial assistance, it is the latter avenue of relief that is applicable in this case, and it in turn makes the Defendant's actions reviewable under the APA. *See Marlow v. United States Department of Education,* 820 F.2d 581, 582 (2nd Cir.1987).[10]

---

7. Under *Cort,* an implied private right of action exists where: (1) the plaintiff is a member of the class for whose especial benefit the statute was enacted; (2) there is an indication, implicit or explicit, of Congressional intent to support a private right of action; (3) an implied right of action is consistent with the legislative scheme; and (4) the cause of action is not one that is "traditionally relegated to state law, in an area basically the concern of the states". *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088.

The First Circuit in *N.A.A.C.P.* noted that "cases discussing a 'private right of action' implied from a federal statute do not involve a right of action against the federal government. Rather, they typically involve statutes that impose obligations upon a *nonfederal person* (a private entity or or a nonfederal agency of government)." The *Cort* test was useful in determining Congress' intent in this limited respect.

8. Section 504 was modeled upon Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq., see* S.Rep. No. 1297, 93d Cong., 2d Sess. 39–40, *reprinted in* 1974 U.S. Code Cong. & Admin. News 6373, 6390; *Marlow v. U.S. Department of Education,* 820 F.2d 581, 582 (2nd Cir.1987).

Under § 505, as amended in 1978, the "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964.... shall be

available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under [section 504]."

9. The Court is not persuaded by Plaintiff's argument that the creation of the right to attorneys fees in § 505(b), 29 U.S.C. § 794a(b), creates a right to an implied private right of action against the federal government in all its conducted activities. The attorney fee provision must be read in conjunction with the preceeding two provisions incorporating Title VI and Title VII remedies—it should not be read as creating an additional implied remedy.

10. In *Marlow,* the court found that review of an agency's decision not to take action on a claimant's complaint was properly reviewed under the APA. Claimant had brought action against the Secretary and Department of Education, seeking to reopen his administrative complaint and an order allowing him to rebut a finding by the Department's Regional Office for Civil Rights that his handicap (a psychiatric disorder) prevented him from "performing the essential functions of a teaching job." *Marlow,* 820 F.2d at 582. The Court found that the teacher had no private right of action under § 504 of the Rehabilitation Act, and that "[t]he statute by which federal agency action "similar" to that involved here is made reviewable is the Administrative Procedure Act...." *Id.,* at 582.

This is not a case where application of the APA will mean no review, as when "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *see also, N.A.A.C.P.*, 817 F.2d at 153. A more persuasive case might be made for implying a private right of action were the APA remedies entirely inadequate or unavailable. Further, although the Court acknowledges that private rights of action have been implied under § 504 against non-federal recipients of federal assistance and against federal funding agencies themselves, *see Prewitt v. United States Postal Service*, 662 F.2d 292 (5th Cir.1981) (suit against U.S. Postal Service for denial of employment); *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir.1977) (suit against public school authorities); *Lloyd v. Illinois Regional Transportation Authority*, 548 F.2d 1277 (7th Cir.1977) (suit against state public transportation authorities), this case does not involve a federal agency acting as an employer or as an agency providing federal funds being used by a private entity for discriminatory purposes. *See Baker v. Bell*, 630 F.2d 1046, 1049 (5th Cir.1980) (claim that DOT violated § 504 by approving a grant to finance the discriminatory purchase of buses that were not accessible to the handicapped).

Accordingly, this Court finds that Plaintiff has no implied private right of action under § 504 against a federal agency for its regulations specifying the minimum qualifications for drivers of interstate motor carriers. Congress has explicitly made the enforcement provisions of Title VI applicable to § 504, but those enforcement provisions make the Defendant's regulations reviewable under the APA. As the Supreme Court noted in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the legislative history of Title VI reflects a compromise between the joint concerns of "protecting individual rights without subjecting the Government to suits." *Id.*, at 715, 99 S.Ct. at 1967. Had Congress intended a private right of action to exist against a federal agency under such circumstances, it would have stated so explicitly—as it did with

respect to federal providers of financial assistance and against federal agencies acting as employers. Consequently, "it is reasonable to assume that Congress meant the APA to govern." *N.A.A.C.P.*, 817 F.2d at 153.

\* \* \*

Accordingly, for the reasons set forth herein, it is hereby ORDERED that Plaintiff's complaint will be, and hereby is, DISMISSED for failure to state a claim on which relief may be granted. Dismissal is without prejudice to the filing of an amended complaint stating a claim for relief under the Administrative Procedure Act.