10-3550-cv
Lopez v. Jet Blue Airways

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

————————

August Term, 2011

(Argued: October 21, 2011               Decided: December 1, 2011)

Docket No. 10-3550-cv

————————

MARY LOPEZ,

     *Plaintiff-Appellant*,

     -v.-

JET BLUE AIRWAYS,

     *Defendant-Appellee.*

————————

Before: CABRANES, LIVINGSTON, and CHIN, *Circuit Judges*.

————————

Plaintiff-appellant Mary Lopez appeals from a judgment entered in the United States District Court for the Eastern District of New York (John Gleeson, *Judge*) dismissing her disability-discrimination complaint against appellee Jet Blue Airways for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In a case of first impression in our Court, we affirm the order of the District Court because (1) no private right of action exists for a violation of the Air Carrier Access Act of 1986, and (2) Title III of the Americans with Disabilities Act of 1990 does not apply to services provided by an air carrier in an airport terminal used primarily to facilitate air transportation.

GABRIEL E. ESTADELLA, Law Office of Gabriel E. Estadella PLLC, Brooklyn, NY, *for Plaintiff-Appellant.*

MATTHEW A. STEINBERG (Daniel D. Schudroff, *on the brief*), Jackson Lewis LLP, New York, NY, *for Defendant-Appellee.*

JOSÉ A. CABRANES, *Circuit Judge*:

We consider here, as matters of first impression in this Court, (1) whether the Air Carrier Access Act of 1986 ("ACAA"), 49 U.S.C. § 41705, provides a private cause of action against air carriers for disability discrimination; and (2) whether Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181–12189, excludes air carriers from liability for discrimination in the provision of services in airport terminals used primarily to facilitate air transportation.

Plaintiff-appellant Mary Lopez appeals a judgment of the United States District Court for the Eastern District of New York (John Gleeson, *Judge*) entered August 20, 2010 dismissing her disability discrimination claims against appellee Jet Blue Airways ("JetBlue") under the ACAA and the ADA for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

Lopez alleges that she requires wheelchair assistance as a result of her disability, reflex sympathetic dystrophy, and that JetBlue discriminated against her by failing to provide timely wheelchair assistance during her July 3, 2009 flight from John F. Kennedy International Airport in New York ("JFK") to Aguadilla International Airport in Aguadilla, Puerto Rico ("Aguadilla"), as well as during her July 10, 2009 return flight from Aguadilla to JFK.  According to Lopez, the wheelchair assistance she requested to board the flight at JFK on July 3, 2009 did not arrive until just before the aircraft door closed, and the delay caused pain and swelling in her foot, as well as resulting anguish, anxiety, and nightmares.  In addition, Lopez asserts that she was not provided with wheelchair assistance in a timely fashion when she arrived at Aguadilla on July 10, 2009, for her

return flight to JFK, and that when she landed at JFK she was taken by wheelchair to the baggage claim area but was not thereafter taken to her car.

On July 16, 2009, Lopez filed an administrative complaint with the Department of Transportation ("DOT") against JetBlue based on her experiences on July 3, 2009, and July 10, 2009. JetBlue admitted that the wheelchair attendant was late in arriving at the gate on July 3, 2009, and apologized for the inconvenience. The DOT concluded that JetBlue had violated the federal regulation requiring that air carriers "promptly provide or ensure the provision of assistance requested by or on behalf of passengers with a disability." *See* 14 C.F.R. § 382.95(a). Regarding Lopez's experiences on July 10, 2009, JetBlue denied any wrongdoing and the DOT was unable to determine whether JetBlue had violated any regulations in those instances. The DOT took no further action against JetBlue with respect to the complaint.

Lopez filed a *pro se* complaint against JetBlue in the District Court on April 6, 2010, and an amended complaint on April 15, 2010. JetBlue filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) on June 3, 2010. The District Court granted the motion to dismiss on August 19, 2010, finding that, read liberally, Lopez's complaint could be understood to assert claims pursuant to the ACAA and the ADA, neither of which entitled Lopez to bring an action against JetBlue under the circumstances presented.

**I.**

We review *de novo* the District Court's dismissal of a complaint for failure to state a claim upon which relief can be granted, accepting all well-pleaded factual allegations in the complaint as true and drawing all inferences in favor of the plaintiff. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). In reviewing a decision based on Rule 12(b)(6), our task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sims v. Artuz*, 230 F.3d

3

14, 20 (2d Cir. 2000) (internal citation and quotation marks omitted). Moreover, a *pro se* complaint is entitled to a particularly liberal reading. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (internal citation and quotation marks omitted)).

## II.

We affirm the judgment of the District Court substantially for the reasons stated in its thoughtful and thorough opinion. *See Lopez v. JetBlue Airways*, No. 10-cv-1552, 2010 WL 3311428 (E.D.N.Y. Aug. 19, 2010).

## A.

The ACAA prohibits air carriers from discriminating against "an otherwise qualified individual" because "the individual has a physical or mental impairment that substantially limits one or more major life activities." 49 U.S.C. § 41705(a)(1).[1] Lopez's complaint asserts conduct by JetBlue that arguably violates the ACAA and its implementing regulations. Indeed, the DOT concluded that JetBlue violated one of those regulations by failing to provide timely wheelchair assistance on July 3, 2009. Nevertheless, the ACAA does not expressly provide a private cause of action against an air carrier for violation of its terms, and the question presented, therefore, is whether a private right of action should be "implied."

In *Alexander v. Sandoval,* 532 U.S. 275 (2001), the Supreme Court strictly curtailed the authority of the courts to recognize implied rights of action, requiring that a review of the text and

---

[1]  "In providing air transportation, an air carrier, including (subject to section 40105(b)) any foreign air carrier, may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. . . ." 49 U.S.C. § 41705(a)(1).

4

structure of a statute yield a clear manifestation of congressional intent to create a private cause of action before a court can find such a right to be implied. In ascertaining whether a private right of action exists, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* at 286–87. To this end, "[s]tatutory intent . . . is determinative, because [w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* Thus, the Court instructed, "[i]n determining whether statutes create private rights of action, as in interpreting statutes generally, legal context matters only to the extent it clarifies text." *Id.* at 288n (internal citation omitted).

Although we have not yet addressed whether a right of action should be implied from the text of the ACAA, four of our sister circuits have spoken on the matter. Prior to the Supreme Court's decision in *Sandoval*, the Fifth and Eighth Circuits relied significantly on the ACAA's legislative history to recognize an implied right. *See Shinault v. Am. Airlines, Inc.,* 936 F.2d 796, 801 (5th Cir. 1991); *Tallarico v. Trans World Airlines, Inc.,* 881 F.2d 566, 568–69 (8th Cir. 1989). Following *Sandoval*, the Tenth and Eleventh Circuits, relying on the authority provided by the Supreme Court in *Sandoval*, declined to rely on legislative history and found no congressional intent to create a private cause of action in the statutory text. *See Boswell v. Skywest Airlines, Inc.,* 361 F.3d 1263, 1269–71 (10th Cir. 2004); *Love v. Delta Air Lines,* 310 F.3d 1347, 1354–60 (11th Cir. 2002); *see also Ruta v. Delta Airlines, Inc.,* 322 F. Supp. 2d 391, 402–03 (S.D.N.Y. 2004) ("I am persuaded by the Eleventh Circuit's decision in *Love v. Delta Air Lines* that there is no private right of action under the ACAA— at least since the United States Supreme Court's decision in *Alexander v. Sandoval*[.]").

We agree with the Tenth and Eleventh Circuits that the text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court. The statute does not expressly provide a right to sue the air carrier, and that right should not be implied

5

because the statute provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers. An aggrieved passenger may file a written complaint alleging a violation of federal statutes regulating air travel (49 U.S.C. §§ 40101–46507), including the ACAA, 49 U.S.C. § 46101(a)(1); the DOT is generally required to investigate complaints that appear to be based on reasonable grounds, *id.*[2] If, following such an investigation, including notice to the air carrier and an opportunity to be heard, the DOT concludes that the carrier has committed a violation, the DOT is required to issue an order to compel compliance with the applicable statutory provision. *Id.* § 46101(a)(4). The Secretary must investigate *all* received complaints alleging a violation of the ACAA, must review complaints directed to air carriers of disability discrimination, and must publish disability-related complaint data. *Id.* § 41705(c)(1)–(3). The DOT may also vindicate the claims of a meritorious complaint through a number of other means.[3]

The ACAA also provides a limited right of access to the federal courts by permitting an individual with a "substantial interest" in an administrative decision of the DOT to file a petition for review in a United States Court of Appeals. *See id.* § 46110(a).[4] Like the administrative-enforcement scheme, this limited right of review of an administrative decision suggests that Congress did not intend to otherwise allow access to federal courts under the statute. *See Sandoval,* 532 U.S. at 290

---

[2] "A person may file a complaint in writing with the Secretary of Transportation [(or the Under Secretary or Administrator)] about a person violating this part or a requirement prescribed under this part. Except as provided in subsection (b) of this section, the Secretary, Under Secretary, or Administrator shall investigate the complaint if a reasonable ground appears to the Secretary, Under Secretary, or Administrator for the investigation." 49 U.S.C. § 46101(a)(1).

[3] The DOT has power to revoke an airline's air carrier certificate, *id.* § 41110(a)(2)(B), impose fines, *id.* § 46301(a)(1), initiate an enforcement action in a federal district court, *id.* § 46106, or request that the Attorney General bring a civil enforcement action, *see id.* § 46107(b)(1).

[4] "[A] person disclosing a substantial interest in an order issued by the Secretary of Transportation [(or the Under Secretary or Administrator)] in whole or in part under this part . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." 49 U.S.C. § 46110(a).

("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

In sum, although the ACAA is intended to protect the passengers of air carriers against discrimination on the basis of disability, the text and structure of the statute show that Congress chose to accomplish this goal through means other than private enforcement actions in the district courts. The District Court thus properly dismissed the disability discrimination claim brought by Lopez pursuant to the ACAA.

**B.**

The District Court also read Lopez's complaint to allege a cause of action under Title III of the ADA. Unlike the ACAA, Title III of the ADA explicitly provides a private right of action for injunctive relief for violations of a right granted thereunder. 42 U.S.C. § 12188(a);[5] *see, e.g.*, *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) (noting that private individuals may obtain injunctive relief for violations of Title III of the ADA).

We can conceive of two claims Lopez may have brought under the ADA: (1) disability discrimination in the provision of "specified public transportation services," 42 U.S.C. § 12184, and (2) disability discrimination in a "place of public accommodation," 42 U.S.C. § 12182.

### 1. "Specified Public Transportation Services"

Title III of the ADA prohibits "private entit[ies] that [are] primarily engaged in the business of transporting people" from discriminating on the basis of disability in the provision of "specified public transportation services." 42 U.S.C. § 12184(a).[6] The statute defines "specified public

---

[5] "The remedies and procedures set forth in section 2000a-3(a) of this title [which permits "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order," *id.* § 2000a-3(a)] are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter . . . ." 42 U.S.C. § 12188(a).

[6] "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment

7

transportation" as "transportation by bus, rail, or any other conveyance (*other than by aircraft*) that provides the general public with general or special service (including charter service) on a regular and continuing basis." 42 U.S.C. § 12181(10) (emphasis added). Air carriers are not liable under this section for disability discrimination in the provision of services related to air transportation.

In this case, Lopez cannot state a claim under § 12184(a) because the alleged discrimination occurred in the provision of services related to air transportation, and thus she did not experience discrimination in the "full and equal enjoyment of *specified public transportation services*." *Id.* § 12184(a) (emphasis added).

### 2. *"Place of Public Accommodation"*

Title III also prohibits "any person who owns, leases . . . , or operates a place of public accommodation" from discriminating on the basis of disability in "any place of public accommodation." *Id.* § 12182(a).[7] The statute enumerates 12 categories of "private entities" that "are considered public accommodations." *Id.* § 12181(7)(A)-(L).

The only "public accommodation" category that is arguably relevant to this case is "a terminal, depot, or other station used for specified public transportation." *Id.* § 12181(7)(G). The term "specified public transportation," as defined in § 12181(10), limits when "a terminal, depot, or other station" may qualify as a "public accommodation" under Title III. Terminals, depots, or other stations are "considered public accommodations" under this category only if they are "used for" modes of transportation that fall within the statutory definition of "specified public transportation," *id.* § 12181(7)(G)—namely, "transportation by bus, rail, or any other conveyance (*other than by aircraft*)

---

of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce." 42 U.S.C. § 12184(a).

[7] "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

that provides the general public with general or special services (including charter service) on a regular and continuing basis," *id.* § 12181(10) (emphasis added).

"Terminal, depot, or other station," considered in conjunction with the aircraft exclusion, is most naturally read to exclude a facility in which surface or underground transportation is merely an auxiliary function and the facility is primarily devoted to air travel. Such a facility is not a "terminal, depot, or other station" pursuant to § 12181(7). *Cf.* ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities III-1.2000 (1993) ("In order to be considered a public accommodation with title III obligations, an entity must be private and it must . . . [f]all within at least one of the following 12 categories: . . . Public transportation terminals, depots, or stations (*not including facilities relating to air transportation*) . . . ." (emphasis added)). Accordingly, public transportation terminals, depots, or stations used primarily to facilitate air transportation are not "public accommodation[s]" for purposes of Title III of the ADA.[8]

In this case, Lopez fails to state a claim under § 12182 because the alleged discrimination occurred at a facility used primarily for air transportation, and Title III does not contemplate a claim against an air carrier under those circumstances.

\*　　\*　　\*

Accordingly, the District Court properly dismissed Lopez's disability discrimination claim brought pursuant to Title III of the ADA.

---

[8] We need not decide whether an air carrier may be held liable under different circumstances or different provisions of Title III. For example, we do not decide whether an air carrier could be found to be an owner, lessor, lessee, or operator of a public accommodation under one of the other definitions of that term. *See* 42 U.S.C. § 12181(7). Similarly, it remains an open question whether an air carrier could be held liable for disability discrimination either in the provision of travel services other than by aircraft, *see id.* § 12181(10), or in the provision of travel services located in "a terminal, depot, or other station" that is *not* primarily used for air travel, *see id.* § 12181(7)(G).

## CONCLUSION

The August 20, 2011 order of the District Court dismissing Lopez's disability discrimination complaint is **AFFIRMED** because (1) no private right of action exists for a violation of the ACAA, and (2) an air carrier cannot be held liable under Title III of ADA for transportation services provided in airport terminals used primarily to facilitate air travel.